Francis John FORSTER, M.D., Mary Agnes Forster, Plaintiffs–Appellants,

v.

COUNTY OF SANTA BARBARA, Santa Barbara County Sheriff's Department, California Board of Medical Quality Assurance, John Carpenter, Jerry Goddard, Chip Marchbanks, Jim Thomas, Leyland Bentley and Lloyd Gillis, Defendants–Appellees.

No. 88–6372.

United States Court of Appeals, Ninth Circuit.

Argued Aug. 7, 1989.

Submitted Aug. 28, 1989.

Decided Feb. 7, 1990.

Bd. of Medical Quality Assur. and Lloyd Gillis.

Before BROWNING, FARRIS and CANBY, Circuit Judges.

PER CURIAM:

Because police suspected Dr. Forster of illegally prescribing narcotics, they began investigating him in 1980 and eventually arrested him in 1983. At the time of his arrest, Dr. Forster was an outspoken member of NORAID, the Northern Irish Aid Committee. He was taken into custody just before a planned NORAID protest of the Queen of England's visit to Santa Barbara. The charges were later dropped.

In 1985, Forster and his wife [1] filed this 42 U.S.C. §§ 1983 and 1985 action for damages against a number of state and county defendants, challenging the validity of the warrants issued for Dr. Forster's arrest and search of his medical office. Dr. Forster contends he was arrested solely to stifle his political protest. The district court found the warrants to be legally issued and entered summary judgment in favor of all defendants. This appeal followed.[2]

I

We review the district court's grant of summary judgment de novo. *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir.1989).

II

A police officer is qualifiedly immune from a suit for damages arising from

Stephen D. Underwood, Office of County Counsel, Santa Barbara, Cal., for defendants-appellees County of Santa Barbara, Santa Barbara County Sheriff's Dept., John Carpenter, Jerry Goddard, Chip Marchbanks, Jim Thomas, and Leyland Bentley.

Joel A. Davis, Deputy Atty. Gen., Los Angeles, Cal., for defendants-appellees Cal.

1. Because Mrs. Forster alleged only that her civil rights were derivatively infringed upon due to defendants' investigation and arrest of her husband, we address only Dr. Forster's contentions.

2. We required the parties to file supplemental briefing on the question of our jurisdiction because Forster did not file his notice of appeal within 30 days of entry of the March 31, 1988 judgment. *See* Fed.R.App.P. 4(a). Yet, he may have filed a timely motion under Fed.R.Civ.P. 59(e), thereby tolling the time limit for filing a notice of appeal, *see* Fed.R.App.P. 4(a)(4)(iii). To be timely, Forster had to serve his motion on

or before April 14, 1988. *See* Fed.R.Civ.P. 59(b); Fed.R.Civ.P. 6(a). It is not clear from the record, however, whether he did so. The motion and letter of transmittal accompanying it were dated April 14. However, contradictorily, Forster's certificate of service is dated April 15. He now claims this latter date to be an "inexplicable mistake." Because of this factual dispute, we do not reach the jurisdictional question but turn instead to the merits. *See Norton v. Mathews*, 427 U.S. 524, 532, 96 S.Ct. 2771, 2775, 49 L.Ed.2d 672 (1976); *Wolder v. United States*, 807 F.2d 1506, 1507 (9th Cir.1987).

an allegedly illegal arrest or search unless "a reasonably well-trained officer in [his] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). Applying this test, we must first decide whether the warrant was valid; if not, we must then determine whether the police officer's reliance on the warrant was nonetheless objectively reasonable. *See Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *see also Hutchinson v. Grant*, 796 F.2d 288, 290 (9th Cir.1986) ("A police officer has immunity if he arrests with probable cause."). Because we find the warrants to be valid, we do not reach the officers' objective reasonableness.

■ A warrant is valid only if supported by an affidavit establishing probable cause. *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir.), *amended*, 769 F.2d 1410 (9th Cir.1985). There is "a presumption of validity" with respect to the affidavit supporting a warrant. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). This presumption can be overcome if the party challenging the affidavit makes allegations of deliberate falsehood or reckless disregard for the truth, and those allegations are accompanied by an offer of proof. *Id.* If these requirements are met, the allegedly false or reckless material must be set aside. *Id.* If there remains sufficient content in the affidavit to support probable cause, the officer is qualifiedly immune.[3]

■ The warrant for Dr. Forster's arrest[4] charged him with violating Cal. Health & Safety Code § 11154 (1982).[5] The affidavit supporting the warrant detailed eleven undercover visits to Dr. Forster's office over 1½ years. During all but one visit, Dr. Forster wrote prescriptions for controlled substances despite little indication from his "patients" that they had any physical complaint, and after only cursory medical examination and taking of medical histories. The affidavit also alleges he asked these patients to use different pharmacies for each prescription, and made comments indicating that he could be in trouble if anyone found out he was writing these prescriptions.

Dr. Forster asserts the affidavit is "replete with falsehoods." However, his version of these visits does not differ dramatically from that in the affidavit. Nevertheless, even after removing these alleged "falsehoods," the remaining facts still give rise to a reasonable belief that Dr. Forster violated Section 11154, and therefore support the finding of probable cause. *See Hutchinson*, 796 F.2d at 290. The district court did not err in determining the officers are qualifiedly immune.

### III

■ Dr. Forster asserts his "expectation that his conversations with patients, in the sanctity of his medical office, would not be subject to electronic surveillance by the undercover officers posing as bona fide patients," amounts to a reasonable expectation of privacy that is constitutionally pro-

---

3. Dr. Forster asserts *Franks*, a criminal case, is inapplicable because this is a civil action. We disagree. In *Malley*, the Court incorporated the objective reasonableness standard developed in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), a criminal case, to evaluate the actions of an officer whose request for a warrant allegedly caused an unconstitutional arrest. *Malley*, 475 U.S. at 344–45, 106 S.Ct. at 1097–98. The Court explained it would be "incongruous" to test police behavior by the objective reasonableness standard in the context of the suppression hearing while employing a different standard in a section 1983 action. *Id.* Similarly, we incorporate the *Franks* standard because we find it incongruous to employ one standard to deal with alleged falsities in a war-

rant affidavit in the context of a suppression motion and another in a civil rights action.

4. Because identical affidavits were prepared to support the arrest and search warrants, our reasoning applies with equal force to the search warrant. *See Malley*, 475 U.S. at 344 n. 6, 106 S.Ct. at 1097 n. 6.

5. Section 11154 provides:

Except in the regular practice of his or her profession, no person shall knowingly prescribe, administer, dispense, or furnish a controlled substance to or for any person or animal which is not under his or her treatment for a pathology or condition other than addiction to a controlled substance....

tected by the fourth amendment. We disagree.

A person does not have "a justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to the police." *United States v. White*, 401 U.S. 745, 749, 91 S.Ct. 1122, 1125, 28 L.Ed.2d 453 (1971). Neither the officers' undercover visits, nor their surreptitious recording of conversations with Dr. Forster violated his fourth amendment rights. *See id.; United States v. Aguilar*, 883 F.2d 662, 697–98 (9th Cir.1989).

## IV

 Dr. Forster also contends the defendants conspired to arrest him in order to undercut the effectiveness of his political dissent during the Queen's visit. However, his conclusory assertions that he would not have been arrested but for his connections to NORAID are insufficient to defeat summary judgment on his first amendment claim. *See Coverdell v. Department of Social and Health Services*, 834 F.2d 758, 769 (9th Cir.1987).

## V

 The California Board of Medical Quality Assurance is an agency of the state of California. *See Board of Medical Quality Assurance v. Hazel Hawkins Memorial Hospital*, 135 Cal.App.3d 561, 562 n. 1, 185 Cal.Rptr. 405 (1982); Cal.Bus. & Prof. Code § 2001. Under the eleventh amendment, it is therefore immune from private damages actions. *See Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). Similarly, the eleventh amendment bars Forster's damage claims against Board Agent Gillis because Gillis was sued only in his official capacity. *See id.; Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir.1982).

## VI

 The evidence Dr. Forster presented in the district court fails to give rise to any inference that Lt. Marchbanks and Sheriff Carpenter personally deprived him of any constitutional right, that they either inadequately trained or supervised the deputies, or that any custom or policy of illegal ar-

rests or searches existed. The district court properly granted summary judgment in favor of these defendants. *See Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680–81 (9th Cir.1984).

 Similarly, the evidence presented by Dr. Forster raises no inference that a policy of illegal arrests and searches existed in Santa Barbara County. Thus, we conclude no triable issue of fact exists on Dr. Forster's claims against the county or the county sheriff's department. *See id.* at 681.

AFFIRMED.