53 F.3d 341
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 The WILDERNESS SOCIETY; Sierra Club; Pacific Coast
Federation of Fishermen's Association, Inc.;
California Trout, Inc., Plaintiffs-Appellants,
and
Sierra Pacific Industries, Plaintiff-Intervenor,
v.
Robert R. TYRREL; Paul F. Barker, Defendants-Appellees.
 No. 93-16635.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 14, 1995.
Decided April 20, 1995.
 
 Before: NORRIS, WIGGINS, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The Wilderness Society and co-plaintiffs ("Society") appeal the district court's denial of their motion for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. Sec. 2412, in their action to stop the defendant United States Forest Service ("Service") from permitting logging along the South Fork River. We affirm.
 
 
 3
 * As an initial matter, the Service argues for the first time on appeal that the district court lacked jurisdiction to rule on the plaintiffs' motion for fees because it was untimely filed. We decline to address this issue.
 
 
 4
 Were we to review the jurisdictional question and decide it in favor of the Service, we would reach the same result as we now reach on the merits. If we decided the jurisdictional question in favor of the Society, we would then proceed to the merits and affirm. As was the case in Norton v. Mathews, 427 U.S. 524, 532 (1976), "whichever disposition we undertake, the effect is the same. It follows that there is no need to decide the theoretical question of jurisdiction in this case. In the past, we have similarly reserved difficult questions of our jurisdiction when the case alternatively could be resolved on the merits in favor of the same party." See also Lee v. City of Beaumont, 12 F.3d 933, 937-38 (9th Cir. 1993); Wolder v. United States, 807 F.2d 1506, 1507 (9th Cir. 1987). Such a resolution is especially appropriate when the jurisdictional issue was not raised below and turns on facts that were not decided by the district court. See Forster v. County of Santa Barbara, 896 F.2d 1146, 1147 n.2 (9th Cir. 1990).
 
 
 5
 Therefore, we turn to the merits of the district court's decision.
 
 II
 
 6
 The parties agree that under the EAJA, the Government has the burden of proving that it's position was "substantially justified." Bullfrog Films, Inc. v. Wick, 959 F.2d 782, 784 (9th Cir. 1992). The plaintiffs argue, however, that the district court improperly placed the burden of proof on them. Judge Karlton did not issue a written decision on the fees petition, but instead incorporated his comments at the hearing. At one point, Judge Karlton stated "[t]his is an EAJA claim. The plaintiff must demonstrate that the defendant's position was not substantially justified." E.R. Tab 58, at 3. Read in context, however, it is clear that Judge Karlton simply misspoke and applied the correct standard of proof.
 
 
 7
 No one had argued that the plaintiffs had the burden of proof. See Defendants' Opposition to Plaintiffs' Application for Attorneys' Fees, E.R. Tab 56, at 18 (conceding that the Service had the burden of proof). Judge Karlton's other comments make clear that he was simply letting the plaintiffs know that he believed that the Service had clearly sustained its burden of proof and that it was up to the plaintiffs to dissuade him at the hearing. The plaintiffs seemed to understand this and did not attempt to correct the judge's misstatement. In the end, the Judge made clear that he believed that the Service had more than sustained its burden of proof and that it was "absolutely clear" to him that the Service's position was substantially justified. E.R. Tab 58, at 3. It would serve no purpose to remand for clarification when it is clear that no change in the outcome would result.
 
 III
 
 8
 Under the EAJA, a prevailing party is entitled to attorney's fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. Sec. 2412(d)(1)(A).[1] The district court found that the Forest Service's position, while erroneous, was substantially justified. E.R. Tab 58, at 7. This determination is reviewed for abuse of discretion. Barry v. Bowen, 825 F.2d 1324, 1330 (9th Cir. 1987).
 
 
 9
 The government's position is substantially justified if "it has a reasonable basis in both law and fact." Id. In making this threshold determination, the district court must consider "the record of both the underlying government conduct at issue and the totality of circumstances present before and during litigation." Id.
 
 
 10
 The plaintiffs argued that the Service was violating the Wild and Scenic Rivers Act, 16 U.S.C. Sec. 1271 et seq. ("WSRA"), in three discrete ways: by failing to implement a management plan, failing to cooperate with other environmental agencies, and by failing to adequately protect the South Fork River. In response, the Service made four legal and factual arguments.
 
 
 11
 First, the Service initially argued that the Act did not regulate activities occurring beyond the legal border of the river and because none of the logging would occur within that boundary, the Act was inapplicable to the proposed sale. The district court rejected this argument and was upheld on appeal on this issue. See Wilderness Soc'y v. Tyrell, 701 F.Supp. 1473, 1484-86 (E.D. Cal. 1988); Wilderness Soc'y v. Tyrell, 918 F.2d 813, 819 (9th Cir. 1990). However, in explaining his ruling, Judge Karlton stated that "here's a brand new statute. Its application to these facts had never been tested. The government argues that the sale didn't fall within the corridor, and therefore, the statute didn't apply at all, which was perfectly plausibly wrong in my view." E.R. Tab 58 at 3-4.
 
 
 12
 The Act provides that notwithstanding any special duties the agency has in the management of the river within the specified boundaries:
 
 
 13
 the head of any other Federal department or agency having jurisdiction over any lands which include, border upon, or are adjacent to, any river included within the National Wild and Scenic River System ... shall take such action respecting management policies, regulations, contracts, plans, affecting such lands ... as may be necessary to protect such rivers in accordance with the purposes of this chapter.
 
 
 14
 16 U.S.C. Sec. 1283(a) (emphasis added). On appeal, therefore, this court summarily held that the Act regulated the timber sale because "[t]he proposed sale of timber, whether conducted on land within the river's boundaries or adjacent to the river area, will impact protected values." 918 F.2d at 819. In light of the plain language of the statute, the Service's position on this issue was unreasonable.
 
 
 15
 However, the Service was reasonable in arguing that even if the Act applied, the Service had complied with the requirements of the Act. The Service argued that the Act did not require it to create a management plan prior to logging the area. This position was vindicated on appeal of the summary judgment when this court held that the Act did not require the Service to prepare a management plan prior to going forward with the timber sale. Id. at 816-19.
 
 
 16
 Next, the Service argued that it had fully complied with its duty to "cooperate with the Secretary of the Interior and with the appropriate State water pollution control agencies for the purpose of eliminating or diminishing the pollution of waters of the [designated] river." 16 U.S.C. Sec. 1283(c). The Service argued that it satisfied the cooperation requirement through its general cooperation with other agencies over the years to improve the South Fork River and because it had consulted with various agencies in planning the timber sale, although it had rejected most of their criticisms and suggestions.[2] The plaintiffs, on the other hand, claim that the district court was correct in holding that the duty to cooperate was greater than a obligation of mere "consultation." 701 F.Supp. at 1489. Instead, the court concluded, the statute imposes a duty of "at least attempted mutual accommodation" with respect to this particular timber sale, a standard the Service failed to meet. E.R. Tab 21 at 9.
 
 
 17
 The statute does not define the duty of cooperation. See Wilderness Soc'y, 918 F.2d at 820. As the district court noted, whether the cooperation requirement creates an obligation of simple consultation or attempted accommodation, or something in between was an issue of first impression and a "tough problem." S.E.R. Tab 4, at 65, 66. While we need not determine whether the district court was correct in saying that the Service's interpretation of the statute was ultimately wrong, we do agree that it was not unreasonable.
 
 
 18
 Finally, the Service argued that its plan adequately protected the South Fork River. The district court stated throughout the litigation that there was a "genuine factual dispute among qualified scientists ... as to the project's impact on water quality." 701 F.Supp. at 1488. See also S.E.R. Tab 5 at 10 ("This is a legitimate disagreement between competent people about what the effect of this logging will be"). Thus, it is no surprise that when the fee motion was argued, the court stated yet again that the Service had made a "perfectly good scientific argument, factual argument ... as to whether or not it would endanger the river or the fish at all." E.R. Tab 58 at 4.
 
 
 19
 The district court did not abuse its discretion in reaching this conclusion. First, the Service plan clearly included some steps to reduce the impact of the logging on the river. Second, the actual impact of the plan was vigorously disputed. Finally, since the statute is new and vague, there is also an unresolved legal question over how much of an impact is acceptable. There is no basis for overturning the district court's determination of the reasonableness of the Service's position on this issue.
 
 
 20
 Thus, the Service was substantially justified in arguing that the planned sale was legal. The plaintiffs also argue that during the course of the litigation, the Service made some factual assertions that it later admitted were false after causing the plaintiffs to expend significant resources to rebut them. See Appellants' Opening Brief at 28-29. However, even assuming that the Service made some unreasonable factual assertions, these instances of unreasonableness are insufficient to show that the district court abused its discretion in finding that in light of the totality of the circumstances, the Service's position was substantially justified.
 
 
 21
 The Service's Motion to Dismiss Appeal is DENIED. The district court's order denying fees is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The statue further provides that:
 "position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings.
 28 U.S.C. Sec. 2412(d)(2)(D).
 
 
 [2]
 The Service made an alternative argument that it had no duty to cooperate because that duty was imposed only on the lead agency in charge of managing the protected river and that the Act imposed this duty on the state when the state had designated the river for protection. We do not address the reasonableness of this argument since the Service's alternate argument on this issue was substantially justified